IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MARLON DESHONE QUARLES,        )
                                )
        Movant,                 )
                                )
    vs.                         ) No. 1:20 CV 74 SNLJ
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or

correct sentence by Marlon Deshone Quarles, a person in federal custody. On May 30, 2017,

Quarles pled guilty before this Court to the offense of Burglary of a Pharmacy (Count I), and

Possession with Intent to Distribute Controlled Substances (Count 2). On August 29, 2017, this

Court sentenced Quarles to the Bureau of Prisons for a term of 188 months on Count I and II, to run

concurrently for an aggregate term of 188 months imprisonment. Quarles' § 2255 motion is fully

briefed and ripe for disposition.

**FACTS**

**A. The Indictment.**

On December 15, 2016, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned a two-count Indictment against Marlon Deshone Quarles, charging him with

Burglary of a Pharmacy in violation of Title 18, United States Code, Section 2118(b) (Count 1)

and Possession of Controlled Substances With Intent to Distribute in violation of Title 21, United

States Code, Section 841(a)(1) (Count 2). (DCD 1; Exh. 1) On February 7, 2017, Quarles made

his initial appearance on the federal charges. Quarles announced that he was hiring Attorney Ted

Liszewski to represent him. Leszewski filed his Entry of Appearance on February 8, 2017, the

1

same date that Quarles was arraigned.  At that arraignment, Quarles pled not guilty to the

charges.

On March 13, 2017, Leszewski filed a Motion to Withdraw as Quarles' attorney. That

motion was granted on March 16, 2017. Federal Defender Michael A. Skrien was appointed to

represent Quarles from that point on.

### B.  Pretrial Motions.

On March 31, 2017, Quarles' attorney filed a Waiver of Pretrial Motions. Quarles

appeared before United States Magistrate Judge Abbie Crites-Leoni and formally waived his

right to file pretrial motions. Quarles case was set for trial on May 30, 2017.

### C.  Plea.

Quarles and his attorney appeared before this Court for his plea hearing. Quarles entered

a guilty plea to both counts of his Indictment. Quarles also signed a written plea agreement

setting out the terms of his guilty plea agreement with the Government. (DCD 41) Quarles

admitted the following offense conduct, both by oral colloquy and by the written plea

agreement.

> On June 18, 2016, Marlon Deshone Quarles and another unidentified person
> drove to the parking lot of the Ferguson Medical Group, which is located in Scott
> County, Missouri. They arrived in a silver Nissan vehicle. During their first visit,
> Ferguson Medical Group was open to the public. Randy's Rx is a pharmacy
> located within the premises of the Ferguson Medical Group. Randy's Rx is
> registered with the Drug Enforcement Administration under section 302 of the
> Controlled Substances Act as a pharmacy.
> Ferguson Medical Group normally closed their premises by locking the front
> glass and metal door and placing a padlock on that door. Prior to closing, either
> Quarles or his associate walked up to the entry door, removed the lock from that
> door and placed their own lock in its place.
> At around 5:00 p.m. on the same day, Quarles and his associate drove back to the
> Ferguson Medical Group. The two men walked up to the front door, removed
> their padlock, and broke the door open with a hatchet. Quarles and his associate
> broke a glass door to the pharmacy, entered Randy's Rx and took several
> medications, including many containing oxycodone, morphine or oxycontin, all of
> which are controlled substances. The value of the medicines taken amounted to

$13,340.63.

Quarles managed to cut himself at some point in breaking in the two glass doors. Officers that investigated the scene found blood on the pharmacy floor and a cabinet door. Later DNA comparisons by the Missouri State Highway Patrol Crime Laboratory determined that the DNA in the blood left at the scene belonged to Marlon Deshone Quarles.

FBI SA Dan Zwiesler checked the rental car logs and found that Quarles rented a silver Nissan, with license plate number 033-MNZ, from the AVIS car rental agency in Memphis, Tennessee, on June 16, 2016. That car was returned to the agency on June 23, 2016. That same car was seen at other Southeast Missouri pharmacies prior to the burglary.

By this plea, Quarles admits that he participated in the burglary of Randy's Rx as described above and that he took the controlled substances in order to distribute them to other persons. Quarles admits that he traveled in the rental car in interstate commerce from Memphis to Scott County to commit the burglary and then back to Memphis. The location of Quarles' burglary and theft of the controlled substances was in the Eastern District of Missouri in the Southeastern Division.

(DCD 41; Guilty Plea Agreement; also Plea Tr.; pp. 15-17)

### D.  The Presentence Investigation Report.

A Presentence Investigation Report ("PSR") was prepared to assist the parties with Quarles' sentencing hearing. That report recommended that Quarles be sentenced as a career offender. (PSR; ¶ 40) The PSR further recommended that Quarles' base offense level be set at 29 after acceptance of responsibility adjustments, and that his Criminal History Category be set at VI, resulting in a sentencing range of 151 to 188 months. (PSR; ¶ 98) The PSR set out a schedule of controlled substances that were taken, based on police reports from the victim. (PSR; ¶ 30) The defendant did not object to those drug quantities in the PSR.

### E.  Sentencing Hearing.

On August 29, 2017, this Court conducted a sentencing hearing and imposed a sentence of 188 months for Counts 1 and 2, a sentence at the top of the applicable Guideline range. The sentences for each count were ordered to be served concurrently with each other, but consecutively with a term of imprisonment for violating his supervised release from a Tennessee

3

federal court in Case Number 2:14 CR 20068-01. (Sent. Tr.; p. 13) Quarles was also ordered to
have a period of supervised release of three years.  He was ordered to pay a $200 special
assessment and $13, 340.63 in restitution. (DCD 53)

### F.  The Appeal.

Quarles filed a Notice of Appeal on September 12, 2017.  (Case Number 17-3015)
His attorney raised the issue of whether the District Court improperly weighed the sentencing
factors found in Title 18, United States Code, Section 3553(a) and imposed an unreasonable
sentence. On September 26, 2018, Quarles filed a motion asking for permission to file a
supplemental appellate brief. On November 19, 2018, the Eighth Circuit Court of Appeals filed
their decision in Quarles' appeal, affirming his sentence as reasonable and finding that the
District Court "plainly considered the 18 U.S.C. § 3553(a) sentencing factors including the exact
facts that Quarles identifies." *United States v. Quarles*, 743 Fed.Appx. 62, 63 (8th Cir. 2018).
That decision also denied Quarles' motion to file a supplemental brief. *Id.* at FN 2. The
mandate was issued on December 10, 2018.

On February 12, 2019, Quarles' attorney filed a Motion to Withdraw, asserting that
Quarles wished to raise issues in his appeal that the attorney did not believe were meritorious.
On February 25, 2019, the Eighth Circuit Court of Appeals granted Quarles' attorney permission
to withdraw from the case.

On March 18, 2019, Quarles filed a pro-se petition seeking permission to file a
supplemental brief and for rehearing by the appellate court. A copy of Quarles' supplemental
brief was filed with the petition. The request to file the supplemental brief was granted by the
Court's Order dated March 25, 2019. On May 1, 2019, Quarles' request for rehearing was
denied.  On April 15, 2020, Quarles filed this petition under 28 U.S.C. § 2255, asking that this
Court set aside Quarles' conviction and sentence on ineffective assistance of counsel and

4

multiple other grounds.

## APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District

Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to

an evidentiary hearing the court must take many of petitioner's factual averments as true, but the

court need not give weight to conclusory allegations, self-interest and characterizations,

discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st

Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face,

or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and

the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir.

1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims

raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing.

*Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary

where the files and records conclusively show petitioner is not entitled to relief. *United States v.*

*Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. A defendant attempting to prove ineffective assistance of counsel within the context of a section 2255 pleading faces a heavy burden. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance."
*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively,
and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering
all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct.
at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And
we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's
"scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104
S.Ct. at 2065. Courts should not upset a plea solely because of *post hoc* assertions from a
defendant about how he would have pleaded but for his attorney's deficiencies. *Lee v. United
States*, -- U.S. --, 137 S.Ct. 1958, 1967 (2017).

The standard to be used in a collateral charge of ineffective assistance of counsel
following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which
applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads
guilty upon advice from counsel may only contest the voluntary and intelligent character of the
plea by establishing that the advice given was not within the range of professional competence
required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*,
411 U. S. at 267.

## DISCUSSION

**I.     Ineffective assistance of counsel – Counsel failed to object to use of two prior
convictions as career offender predicates, one conviction for several counts of Tennessee
Aggravated Robbery (PSR; ¶ 51) and another conviction for federal Bank Robbery (PSR;
¶ 52).**

In this point, Quarles contends that his attorney was ineffective for failing to prevent
Quarles from being sentenced as a career offender under U.S.S.G. § 4B1.1. In particular,
Quarles asserts that his previous convictions for Tennessee Aggravated Robbery and federal

7

Bank Robbery are not crimes of violence for career offender classification purposes. Quarles'

position is simply incorrect.

A defendant is classified as a career offender for sentencing purposes under the

Sentencing Guidelines if they meet certain criteria. Those criteria are set out as follows:

> (a)     A defendant is a career offender if
> (1)     the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
> (2)     the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
> (3)     the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*U.S.S.G. § 4B1.1*.

§ 4B1.1 sets out a higher base offense level to be applied to career offenders and requires

that career offenders be classified with a Criminal History Category of VI. *U.S.S.G. § 4B1.1(b)*.

("A career offender's criminal history category in every case under this subsection shall be

Category VI.") § 4B1.1 sets out a chart to establish the base offense level for a career offender,

based on the defendant's maximum possible term of imprisonment. In Quarles' case, his

maximum term of imprisonment for each of his counts is 20 years. (PSR; ¶ 97) Under the chart

set out in § 4B1.1(b), a defendant who is classified as a career offender who faces a maximum

term of imprisonment of 20 years has a base offense level of 32. That is the base offense level

assessed in Quarles' PSR after his classification as a career offender. (PSR; ¶ 40)

Quarles does not argue that his conviction for Count II, Possession of Controlled

Substances With the Intent to Distribute, is not a "controlled substance offense" as defined by the

Guidelines. But this Court will set out that definition to show that Quarles' instant conviction is a

controlled substance offense.

The term "controlled substance offense" is defined in *U.S.S.G. § 4B1.2(b)* as follows:

> *(b)*     The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that

> prohibits the manufacture, import, export, distribution, or dispensing of a
> controlled substance (or a counterfeit substance) or *the possession of a*
> *controlled substance (or a counterfeit substance) with intent to manufacture,*
> *import, export, distribute, or dispense.*

U.S.S.G. § 4B1.2(b). (Emphasis furnished)

Count II of Quarles' Indictment charges him with the following conduct:

> On or about June 18, 2016, in Scott County, within the Eastern District of
> Missouri, the defendant, Marlon Deshone Quarles, did knowingly and
> intentionally possess with the intent to distribute oxycodone, hydrocodone,
> and morphine, Schedule II and Schedule III controlled substances, in violation
> of Title 21, United States Code, Section 841(a)(1), and punishable under
> Section 841(b)(1)(C).

(Exhibit 1)

Section 841(b)(1)(C) provides a punishment maximum for this crime at imprisonment of

not more than 20 years. Count II is a controlled substance offense under U.S.S.G. § 4B1.2(b).

At this point, Quarles qualifies to be a career offender because he is over 18 years old and

his instant offense is a controlled substance offense. But Quarles contends that he does not have

two prior felony convictions for crimes of violence. A review of his previous convictions will

demonstrate that Quarles' argument is without merit.

The term "crime of violence" is also defined by the Guidelines:

> (a)    The term "crime of violence" means any offense under federal or state
> law, punishable by imprisonment for a term exceeding one year, that –
> (1)    has as an element the use, attempted use, or threatened use of physical
> force against the person of another, or
> (2)    is murder, voluntary manslaughter, kidnapping, aggravated assault,
> a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful
> possession of a firearm described in 26 U.S.C. § 5845(a) or explosive
> material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). (Emphasis furnished)

Quarles first posits that his conviction for seven counts of Tennessee Aggravated

Robbery are not crimes of violence. He claims, quite correctly, that "a state crime cannot qualify

9

as a predicate for career offender enhancements if it's elements are broader than those of the listed generic offense. (Quarles' Petition; DCD 1; p. 3) Here, the generic offense in question is robbery, compared to the specific offense that Quarles committed of Tennessee Aggravated Robbery.

The conviction documents for Quarles disputed robbery convictions are attached to the Government's Response as Exhibit 2. Those seven indictments charge virtually the same conduct, but for different victims. They all charge that Quarles took property from each victim by "use of a deadly weapon" in violation of T.C.A. 39-13-402.

Tennessee's statutes for robbery and aggravated robbery, effective for 1992, the year of his offense conduct, are set out below:

> (a) Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear.
> (b) Robbery is a Class C felony.

T.C.A. § 39-13-401 (1989).

> (a) Aggravated robbery is robbery as defined in § 39-13-401:
> (1)  Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or
> (2)  Where the victim suffers serious bodily injury.
> (b)  Aggravated robbery is a Class B felony.

T.C.A. § 39-13-402 (1989).

Basically, Tennessee Aggravated Robbery is plain robbery accomplished with the use of a deadly weapon or by injuring the victim. Plain robbery is taking property from a person by an act of violence or putting the victim in fear. Plain robbery is a violent act in that it requires the use, threatened use or attempted use of force in order to commit the crime. Tennessee Aggravated Robbery has, as an element, the use, attempted use or threatened use of force because it adds the requirement of a deadly weapon to be used. Tennessee Aggravated Robbery is therefore a crime of violence under the first definition of a crime of violence and is also an

enumerated crime of violence under the second.

This exact issue was recently discussed in *United States v. Cheers*, 760 Fed.Appx. 272

(5th Cir. 2019). In that case, Cheers contended, in part, that his previous conviction for

Tennessee Aggravated Robbery was not a crime of violence for career offender purposes.

Rejecting that claim, the Fifth Circuit stated:

> We agree with the district court that the Tennessee convictions for aggravated
> robbery were within the scope of the generic robbery crime enumerated in the
> 2002 commentary to the Guidelines. Under Tennessee law, robbery was "taking
> from the person of another property of any value by violence or putting the person
> in fear," TENN. CODE.ANN. § 39-13-401(a) (1989), while aggravated robbery is
> "robbery . . . (1) [a]ccomplished with a deadly weapon or by display of any article
> used or fashioned to lead the victim to reasonably believe it to be a deadly
> weapon; or (2) [w]here the victim suffers serious bodily injury." TENN.CODE.
> ANN. § 39-13-402(a) (1989).

*Cheers*, 760 Fed.Appx. at 275.

Quarles' argument that Tennessee Aggravated Robbery is not a generic crime of violence

is refuted by the holding of *Cheers*. That conviction was most definitely a crime of violence and

a qualifier for Quarles' classification as a career offender.

Quarles' second contention in this point is that his conviction for federal Bank Robbery

(PSR; ¶ 52) was improperly classified as a crime of violence. He asserts that there are non-

violent means of committing bank robbery:

> Petitioner Quarles 1997 bank robbery 2113(a), cannot be used as a predicate
> felony for a career offender enhancement; as 2113(a) can be violated in at least
> three ways. Bank robbery can be committed if a person attempts to obtain by
> extortion any property or anything of value belonging to the custody, control,
> management, or possession of the bank.
> This section can also be violated if a person enters a bank with the intent to
> commit such bank violation of any statute of the United States, or any larceny.
> Since none of these methods trigger those in *Johnson v. United States*, 135 S.Ct.
> 2251, Federal bank robbery cannot be used as a predicate felony for a career
> offender enhancement. Section (a) of 2113, can also be violated if the bank
> robbery is committed by intimidation.
> Since none of these three methods of bank robbery require the "*Johnson*" violent
> force, federal bank robbery is not categorically a violent felony and cannot be
> used as a career offender predicate. See *Johnson v. United States*, 135 S.Ct. 2251,

192 L.Ed.2d 569 (2015).

Quarles' Petition; DCD 1; pp. 3, 4.

Quarles certainly does not support his legal claims with any citation to authority, primarily because the great weight of authority is against his position. Quarles also attempts to combine the separate paragraphs of § 2113(a) as if they constitute one crime. Those two separate paragraphs have been noted to describe two separate crimes and are divisible. Quarles was only charged under the first paragraph of § 2113(a), which is a divisible, completely separate section for this purpose. The first paragraph of § 2113(a) sets out the following crime:

> (a)      Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;
> . . .
> shall be fined under this title or imprisoned not more than twenty years, or both.

Title 18, United States Code, § 2113(a).

It is clear that this crime requires the use of force to commit, in that it only criminalizes robberies of banks and savings and loans by "force and violence, or by intimidation" or by "extortion".

Quarles' federal indictment, attached as Exhibit 3, reads as follows:

> On or about March 5, 1997, in the Western District of Tennessee, the defendants, Marlon Deshone Quarles and Jason Leonard Quarles, being aided and abetted, each by the other, by force, violence, and intimidation did take from the person and presence of another approximately $11,125 in money belonging to and in the care, custody, control, management, and possession of First Bank, 139 Old Hickory Boulevard, Jackson, Tennessee, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such an offense the defendants did assault and put in jeopardy the life of another person by the use of a dangerous weapon, in violation of Title 18, United States Code, Section 2113(a) and (d) and Section 2.

(Exhibit 3)

Quarles' Indictment clearly tracks the charging language of the first paragraph of §

2113(a), charging that Quarles took the bank's money by "force, violence and intimidation".

The indictment also references paragraph (d), which is the paragraph allowing an increased

punishment for this crime if the defendant uses a dangerous weapon or device in the commission

of the crime. No matter what Quarles may argue now, clearly he was charged with, and

convicted of, a crime of violence as defined by U.S.S.G. § 4B1.2(a)(1), in that his crime required

the use, threatened use or attempted use of physical force against the person of another.

But Quarles attempts to add in the crime of bank robbery that can be charged under the

second paragraph of § 2113(a), as if that paragraph were somehow required to be charged in the

first paragraph. That separate crime chargeable under the second paragraph is as follows:

> Whoever enters or attempts to enter any bank, credit union, or any savings and
> loan association, or any building used in whole or in part as a bank, credit
> union, or as a savings and loan association, with intent to commit in such
> bank, credit union, or in any savings and loan association, or building,
> or part thereof, so used, any felony affecting such bank, credit union, or
> such savings and loan association and in violation of any statute of the United
> States, or any larceny –
> Shall be fined under this title or imprisoned not more than twenty years, or both.

Title 18, United States Code, Section 2113(a), second paragraph.

Quarles' Indictment clearly did not charge any violation under this second paragraph. It

did not charge any larceny or any other crime against a bank. Quarles was charged, and

convicted, solely of bank robbery by violence as set out in the first, and divisible, paragraph.

The Eighth Circuit considered Quarles' exact arguments in *United States v. Harper*, 869

F.3d 624 (8th Cir. 2017) and concluded that federal bank robbery charged under § 2113(a) (the

statute that Quarles was convicted under) is a crime of violence, even after considering the

holding of *Johnson*. That Court stated:

> A person violates 18 U.S.C. § 2113(a) under the first paragraph of the provision if
> he, "by force and violence, or by intimidation, takes ... from the person or

>> presence of another, or obtains ... by extortion any property or money or any other
thing of value belonging to ... any bank." Section 2113(a) contains a second
paragraph that proscribes "enter[ing] or attempt[ing] to enter any bank ... with
intent to commit in such bank ... any felony affecting such bank ... and in
violation of any statute of the United States, or any larceny." *Harper does not
dispute that his three convictions were under the first paragraph.*
>
> His challenge to the career-offender designation focuses on the first paragraph of
> § 2113(a) only, and he implicitly concedes that each paragraph of § 2113(a)
> defines at least one separate crime. *See United States v. McBride*, 826 F.3d 293,
> 296 (6th Cir. 2016).

*Harper*, 869 F.3d at 625-26. (Emphasis furnished)

The Eighth Circuit recognized the divisible nature of the two paragraphs of § 2113(a) and

that bank *robbery* is properly chargeable under the first full paragraph. Quarles' attempt to use

the second paragraph does not reflect the crime he was charged with, nor does it recognize the

divisible nature of the statute. Only the first paragraph of § 2113(a) applies here.

The *Harper* Court also dealt with whether a bank robbery by "intimidation" is a crime of

violence:

>> Harper's contention is that "the most innocent conduct penalized under § 2113(a)
is 'intimidation,' " and that a violation of § 2113(a) by intimidation does not have,
as an element, the use, attempted use, or threatened use of physical force against
the person of another. In *United States v. Wright*, 957 F.2d 520 (8th Cir. 1992),
however, this court held that robbery by intimidation under § 2113(a)
categorically involves the threatened use of force: "Intimidation means the threat
of force." *Id.* at 521 (quotation omitted). *Wright* thus controls here unless it has
been superseded by an intervening decision of the Supreme Court.

*Harper*, 869 F.3d at 626.

Quarles' contention that bank robbery by intimidation is not a crime of violence is refuted

by the holding in *Harper*. Intimidation is the threatened use of force and makes bank robbery by

intimidation a crime of violence.

The holding of *Harper* also disposes of Quarles' theory that bank robbery does not

involve a sufficient level of force under *Johnson*. The *Harper* Court set out that determination as

follows:

14

> Harper also mentions fleetingly the possibility that a person could be intimidated
> without a robber threatening to use *violent* force—that is, force "capable of
> causing physical pain or injury to another person." *Johnson v. United States*, 559
> U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010); *see United States v.*
> *Williams*, 690 F.3d 1056, 1067-68 (8th Cir. 2012). This argument fails because
> bank robbery by intimidation requires proof that the victim "reasonably could
> infer a threat of bodily harm" from the robber's acts. *Yockel*, 320 F.3d at 824
> (quotation omitted). A threat of bodily harm requires a threat to use violent force
> because "it is impossible to cause bodily injury without using force 'capable of'
> producing that result." *United States v. Winston*, 845 F.3d 876, 878 (8th Cir.
> 2017) (quoting *United States v. Castleman*, —— U.S. ——, 134 S.Ct. 1405, 1416–
> 17, 188 L.Ed.2d 426 (2014) (Scalia, J., concurring)).

*Harper*, 869 F.3d at 626.

Finally, Quarles' argument that bank robbery should not be classified as a crime of

violence is specifically refuted by the enumerated crimes section of a crime of violence. That

section spells out the different specific types of crimes that are always classified as crimes of

violence. As set out above, the crime of robbery is an enumerated crime, requiring classification

as a crime of violence. The Court in *Harper* pointed out that federal bank robbery is also an

enumerated crime of violence. *Harper*, 869 F.3d at FN 2. Quarles' conviction for federal bank

robbery was properly classified as a crime of violence in order to make him a career offender.

Quarles has three qualifying convictions making him a career offender. First, he has the

Tennessee Aggravated Robbery convictions, which must be considered to be one conviction for

career offender predicate purposes since they were all part of one indictment. (*See* U.S.S.G. §

4B1.2(c)) Quarles' second career offender predicate is his federal bank robbery conviction.

Quarles' third career offender predicate conviction is his 2014 federal convictions for Conspiracy

to Possess With the Intent to Distribute and Distribution of Hydrocodone, Conspiracy to Possess

With Intent to Distribute and Distribution of Not Less Than 500 Grams of Cocaine and

Conspiracy to Possess With the Intent to Distribute and Distribution of Not Less Than 100

Kilograms of Marijuana. (PSR; ¶ 60) These convictions are all "controlled substance offenses"

as described by the Guidelines:

> (b)    The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Quarles' drug crimes were all charged under Title 21, United States Code, §§ 841(a)(1) and 846. All three charges are felonies and all qualify as career offender predicates as controlled substance offenses. With two prior felony convictions for crimes of violence and one prior felony conviction for a controlled substance offense, Quarles was properly classified as a career offender for sentencing purposes.

**II.    Overstatement of criminal history points – The District Court improperly assessed three additional criminal history points for Quarles' conviction for Tennessee Aggravated Robbery (PSR; ¶ 51).**

In this point, Quarles contends that "his criminal history points are overstated". He sets out four different places in the PSR where he asserts that he received too many criminal history points. Each of those arguments is discussed separately below.

As an initial comment, this Court notes that Quarles was assessed the Criminal History Class of VI, the highest possible criminal history class. That is because he was classified as a career offender. By operation of the Sentencing Guidelines, a defendant who is classified as a career offender must be placed in Criminal History Category VI, no matter how many prior convictions they have incurred. (*See* U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."), and PSR; ¶ 66 ("The defendant is a career offender; therefore, the criminal history category is VI.")) So Quarles' arguments about whether he was assessed too many criminal history points for any particular

16

conviction simply misses the mark. Quarles' criminal history category is properly a VI, based solely on his status as a career offender. He cannot change that fact.

Furthermore, when Quarles' criminal history points were added up, he had a total of 30 criminal history points. A defendant is placed in Criminal History Category VI when they have at least 13 criminal history points. With 30 criminal history points, Quarles would have to establish that 17 of those points were improperly assessed *and* establish that he was not a career offender in order to be successful in this argument. He fails completely.

In Quarles' entire criminal history point argument, he claims that he was improperly assessed the following criminal history points, set out in the order that Quarles refers to them in his Petition:

> PSR; ¶ 51    6 points assessed.
>
> PSR; ¶ 58    3 points assessed.
>
> PSR; ¶ 55    1 point assessed.
>
> PSR; ¶ 51    (already referred to above; different argument for exclusion)

(Quarles' Petition; DCD 1; p. 4)

Therefore, even if Quarles was successful, and convinced this Court that all of the contested criminal history points were improperly assessed, he would receive a reduction of ten points, resulting in a total number of criminal history points of 20. That would be seven points more than necessary to place Quarles in Criminal History Class VI, which is where he was when sentenced.

Quarles faces an impossible burden as to his criminal history point argument. Even if successful, he would still be in Criminal History Category VI by the total number of points. And he would still be a career offender, who must be placed in Criminal History Category VI. Quarles' criminal history point calculations cannot be the basis for relief.

17

This Court will discuss why Quarles is incorrect on each of his arguments as to his criminal history points. His first argument is that he was improperly given three additional criminal history points (for a total of six) for the Tennessee Aggravated Robbery convictions. (PSR; ¶ 51) Quarles was convicted of seven counts of Aggravated Robbery for that charge. He was arrested once, on July 23, 1992, for all seven counts of conviction. Quarles points out that, under U.S.S.G. provisions, "all sentences for offenses not separated by an intervening arrest, sentences that resulted from offenses contained in the same charging instrument, and sentences resulting from crimes that were consolidated on the same day at sentencing, are to be counted as one sentence." (Quarles' Petition; DCD 1; p. 4) Quarles is initially correct that normally a series of convictions in one charging document are given one set of criminal history points. Normally, that would lead to a criminal history point total of three for this one set of convictions, even though there were seven counts. (U.S.S.G. §§ 4A1.1(a), and 4A1.2(a)(2)) However, Quarles has not accounted for the application of U.S.S.G. § 4A1.1(e), which states:

> (e)     Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1(e).

The Probation Office calculated Quarles' criminal history points to the letter of the requirements of the Sentencing Guidelines, since Quarles had a total of seven convictions for crimes of violence under this one series of charges. Quarles was given 3 criminal history points for the Tennessee Aggravated Robbery convictions under U.S.S.G. § 4A1.1(a) and, since each of his seven counts of aggravated robbery were crimes of violence, he received three more points under U.S.S.G. § 4A1.1(e), for a total of six criminal history points. There was no error in calculating criminal history points for the conviction referenced at PSR; ¶ 51.

18

**III.     Overstatement of criminal history points – The District Court improperly assessed three criminal history points for a Missouri Second Degree Burglary conviction (PSR, ¶ 58), as Quarles contends that this case was dismissed by the state.**

Next, Quarles argues that his conviction for Missouri Second Degree Burglary (PSR; ¶58) was dismissed on January 27, 2016, and therefore should not have received any criminal history points. The PSR reveals that, instead of being dismissed, Quarles was convicted of Burglary and sentenced to a term of imprisonment of three years. The PSR notes the following regarding that conviction:

> . . . according to automated court records, the charge of Theft/Stealing Any Controlled Substance, Resisting Arrest/Detention/Stop by Fleeing, Assault Second Degree, and Burglary Second Degree were dismissed on January 27, 2016.

PSR; ¶ 58.

It appears that other counts or charges in Quarles' original charging document were dismissed, but not the burglary charge that Quarles was convicted of. Quarles did not provide any proof that *all* of his counts had been dismissed, so his failure of proof should end this issue. In any event, this conviction only accounted for three criminal history points. Even if Quarles were successful in this argument, he would still have 27 criminal history points and still be in Criminal History Category VI.

This point will be denied.

**IV.     Overstatement of criminal history points – The District Court improperly assessed three criminal history points for his Florida conviction for four counts of felony Grand Theft and three counts of misdemeanor Petit Theft (PSR; ¶ 54).**

Quarles argues that his Florida conviction for Grand Theft should not have received any criminal history points because it was a "time-served" sentence. He is correct in the judgment, but fails to mention that he had spent 17.4 months in prison awaiting sentence. So, his sentence was actually 17.4 months. Since that sentence was more than one year and one month long,

Quarles was properly assessed three criminal history points. (U.S.S.G. §§ 4A1.1(a) and

4A1.2(e)) Quarles' argument is without merit.

**V.      Improper career offender predicate – The District Court improperly used Quarles'
conviction for Tennessee Aggravated Robbery (PSR; ¶ 51) in that the conviction was more
than 15 years old.**

Quarles points out that his conviction for Tennessee Aggravated Robbery occurred more

than 15 years ago, and then argues that it should not have counted for criminal history points.

But Quarles failed to properly cite the rule and the relevant date.

The Sentencing Guidelines contain provisions for how long a conviction can still be

assessed criminal history points:

> (1)    Any prior sentence of imprisonment exceeding one year and one month
> that was imposed within fifteen years of the defendant's commencement of the
> instant offense is counted [for criminal history points]. Also count any prior
> sentence of imprisonment exceeding one year and one month, whenever imposed,
> that resulted in the defendant being incarcerated during any part of such
> fifteen-year period.
> . . .
> (3)    Any prior sentence not within the time periods specified above is not
> counted [for criminal history points].

U.S.S.G. § 4A1.2(e).

The PSR contains an exact timeline as to when Quarles was in prison for the Tennessee

Aggravated Robbery conviction. It discloses that Quarles was on parole, still under the state

sentence, until April 15, 2004. That is within fifteen years of the date of the instant offense,

which was June 18, 2016. The Tennessee conviction qualifies for criminal history points. There

was no error. And even if there was error, a reduction of three levels would not result in a lower

Criminal History Category for Quarles. He would still be in Criminal History Category VI, both

by the number of criminal history points and because he is a career offender.

**VI.     Res Judicata and Double Jeopardy – The District Court improperly convicted and
sentenced Quarles in this case for the same offense conduct as was used to find that Quarles
violated the terms of his supervised release in another federal case.**

Quarles was serving a term of supervised release for a Tennessee federal conviction when

he committed the offense conduct in this case. That Tennessee offense was for three separate

drug offenses and was reported at Paragraph 60 in the PSR. Quarles burglarized the Sikeston

drug store that resulted in his conviction in this case and also resulted in a petition for revocation

of his supervised release in the Tennessee case. Quarles requested a hearing for his supervised

release case in Tennessee and his supervised release was revoked after that evidentiary hearing.

(PSR; 60) Now, Quarles contends that Double Jeopardy prevents his conviction in this case,

when that evidence was used to revoke his term of supervised release. His argument borders on

being foolish and is completely without merit.

The Double Jeopardy Clause provides that no person shall "be subject for the same

offence to be twice put in jeopardy of life or limb." U.S. Constitution, Amendment 5. A

defendant has a right under the Double Jeopardy Clause of the Fifth Amendment to prevent

successive punishments and successive prosecutions for the same criminal offense. *United

States v. Dixon*, *509 U.S. 688, 696*, *113 S.Ct. 2849* (1993).

Quarles' exact argument was recently rejected in *United States v. Wilson*, *939 F.3d 929*

(8th Cir. 2019). In that case, Wilson was serving a term of supervised release on a prior federal

conviction from 2010 for being a Felon in Possession of a Firearm. Wilson was released from

prison in 2016 and began serving a term of supervised release. He was found to be in possession

of another firearm in 2016 that resulted in both a new federal prosecution and a petition for

revocation of his supervised release. The court held a revocation hearing, revoked Wilson's

supervised release and sentenced him to serve another 18 months. Wilson then filed a motion to

dismiss the pending new indictment, claiming, just like Quarles here, that the new indictment

essentially prosecuted Wilson twice for the same conduct in violation of the Double Jeopardy

21

Clause of the Fifth Amendment. *Id.* at 931. ("Wilson asserts that the new prosecution

unconstitutionally seeks to punish him for the same conduct that led to the revocation of his

supervised release and accompanying incarceration.")

The *Wilson* Court set out the law regarding the use of current offense conduct to revoke a

defendant's term of supervised release in another case:

> It has long been the jurisprudence of this court that the same conduct can result in
> both a revocation of a defendant's supervised release and a separate criminal
> conviction without raising double jeopardy concerns. See *United States v. Dang*,
> 907 F.3d 561, 567 (8th Cir. 2018); see also *United States v. Bennett*, 561 F.3d
> 799, 802 (8th Cir. 2009). This is because "supervised release punishments arise
> from and are 'treated as part of the penalty for the initial offense.' " *Haymond*,
> 139 S.Ct. at 2379-80 (quoting *Johnson v. United States*, 529 U.S. 694, 700, 120
> S.Ct. 1795, 146 L.Ed.2d 727 (2000)). "The consequences that flow from violation
> of the conditions of supervised release are first and foremost considered sanctions
> for the defendant's 'breach of trust' — his 'failure to follow the court-imposed
> conditions' that followed his initial conviction — not 'for the particular conduct
> triggering the revocation as if that conduct were being sentenced as new federal
> criminal conduct.' " Id. at 2386 (Breyer, J., concurring in the judgment) (quoting
> U.S. Sentencing Guidelines Manual ch. 7, pt. A, cmt. 3(b) (U.S. Sentencing
> Comm'n 2018)).

*Wilson,* 939 F.3d at 931-32.

Other Eighth Circuit cases have come to the same conclusion. *See United States v.*

*Bennett,* 561 F.3d 799, 802 (8th Cir. 2009) ("A hearing to determine whether supervised release

should be revoked, however, is not a criminal prosecution. (Citations omitted) Moreover, the

revocation of supervised release is a penalty attributable to the original conviction, not a new

punishment."); and *United States v. Dang,* 907 F.3d 561, 567 (8th Cir. 2018) ("We have

previously rejected the argument that 'consecutive sentences for [a criminal] offense and the

supervised release violation for the same conduct violated the Double Jeopardy Clause.'") The

Supreme Court came to the same conclusion in *Johnson v. United States,* 529 U.S. 694, 700-701,

120 S.Ct. 1795 (2000), agreeing that revocation of supervised release penalties were attributed to

the original conviction and were not additional punishments for the same crime.

Quarles' contention that his federal pharmacy burglary conduct cannot be used to both

secure the revocation of his supervised release and for a new conviction is simply incorrect.

Quarles' punishment for the revocation of his supervised release for the Tennessee federal case

was for his failure to obey the conditions of his release and not for the particular conduct of his

offense. There was no violation of his Double Jeopardy rights by his current federal prosecution.

This point will be denied.

**VII.    The District Court committed procedural sentencing error by not attaching the factual determination to the PSR and by checking an incorrect box on the form.**

In this point, Quarles complains that his Judgment form was not properly completed. He

contends that this Court committed procedural sentencing error and violated Federal Rule of

Criminal Procedure 32(i)(3)(C) by not attaching the factual determination of sentencing to the

PSR, and committed procedural error in sentencing because the Judgment form incorrectly states

that the sentence does not exceed 24 months from the low end of the guidelines.

In his first assignment of error, Quarles states that his "sentence is procedurally

unreasonable. The courts violated F.R.C.P. Rule 32(i)(3)(C), by not attaching the factual

determination of sentencing petitioner at the top of the guidelines." (Quarles' Petition; DCD 1;

p. 9) Quarles does not state exactly what the factual determination form is or where the factual

determination form was supposed to be attached. His complaint is so vague as to defy

understanding or competent response. But this Court will discuss the rule and how it appears to

apply in Quarles' case.

Federal Rule of Criminal Procedure 32(i)(3)(C) states as follows:

> (i)     Sentencing.
> (3)     Court determinations. At sentencing, the court:
> (C)     must append a copy of the court's determinations under this rule to any
> copy of the presentence report made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(i)(3)(C).

23

Federal Rule of Criminal Procedure 32(i)(3) is a rule that sets out the procedures for disclosing to the Bureau of Prisons any factual disputes that were taken up by the District Court regarding the matters set out in the PSR.  Subsection (A) informs the District Court that the Court may accept any undisputed portion of the PSR as a finding of fact. Subsection (B) informs the District Court that the Court must rule on any disputed portion of the PSR or any other controverted matter or tell the parties that the Court would not rely on the controverted matter in sentencing. Subsection (C) then tells the Court to append a copy of the District Court's findings on disputed sentencing matters to the PSR. Failure of a district court to follow the requirements of Rule 32(i)(3)(C) is legal error and is cognizable in a Section 2255 petition. *See United States v. Yakle*, 463 F.3d 810, 811 (8th Cir. 2006).

The first matter is to decide whether there were any "controverted" matters at sentencing. The only issue brought up by Quarles was whether his prior conviction for bank robbery (PSR; ¶ 52) was a predicate conviction for career offender sentencing purposes. (Sent. Tr.; p. 3) The Government pointed out that Quarles had three qualifying career offender predicate convictions, so even if one was disqualified, Quarles would still be a career offender. The District Court then overruled Quarles' objection. (Sent. Tr.; pp. 3, 4)

In its Statement of Reasons, this Court made a finding that it "adopts the presentence investigation report without change." That Statement of Reasons was attached to the PSR and sent to the Bureau of Prisons. This statement shows that this Court resolved Quarles' arguments against his being a career offender against Quarles. There was no need to do anything more.

A similar situation arose in *United States v. Ramirez-Gonzalez*, 840 F.3d 240 (5th Cir. 2016). In that case, the defendant appealed, contending that the district court did not append his factual findings to the PSR in violation of Rule 32(i)(3)(C). *Id.* at 247. The defendant had

contested whether he had a prior felony conviction for an aggravated felony sentencing enhancement. There was an argument on the record about that issue, with the district court resolving it by finding that the defendant had been convicted of "any other felony". *Id.* at 243. The guideline enhancement was four levels instead of eight. The district court attached a copy of its Statement of Reasons to the PSR, without attaching anything more. The *Ramirez-Gonzalez* Court found this was sufficient to comply with the requirements of Rule 32(i)(3)(C) because "the district court included, implicitly, all of its findings in the Statement of Reasons, which was 'appended' to the PSR", noting that "the Rule's requirement can be fulfilled if the sentencing judge . . . makes written findings and attached them to the presentence report". *Id.* at 248.

The *Ramirez-Gonzalez* Court found that "just as the Statement of Reasons made determinations sufficient to satisfy Rule 32(i)(3)(B), 'appending' it to the PSR is sufficient to satisfy Rule 32(i)(3)(C)." *Id.* at 248.

Quarles' only sentencing argument left for resolution was his argument that he was not a career offender. That argument was resolved against him and implicitly contained in this Court's Statement of Reasons, where it adopted the PSR's findings. There was no error. This Court fully complied with Rule 32(i)(3)(C).

## VIII.  The District Court imposed an unreasonable sentence and made a mistake in completing the Judgment form.

In this point, Quarles complains that this Court improperly checked an incorrect box on his Statement of Reasons. Part IV of that form, on page 2, requires the Court to check one of two boxes with the following information:

25

A.      -   The sentence is within the guideline range and the difference between the maximum and minimum of the guideline ranges does not exceed 24 months.

B.      -   the sentence is within the guideline range and the difference between the maximum and minimum of the guideline range exceeds 24 months, and the specific sentence is imposed for these reasons: (Use Section VIII if necessary)

This Court checked the first box, which appears to be in error, but without consequence. Quarles' applicable Guideline range was 151 to 188 months, which has a range of 37 months between the low end and the high end of the range. Technically, the second box should have been checked.

However, Quarles does not set out any reason that this error would have affected his conviction or sentence or that he would have received some benefit but for the error. He cites no Constitutional safeguard that was violated, or a statutory provision, or a court rule. He merely complains that the wrong box was checked. Since he fails to demonstrate that his conviction or sentence was infirm for that reason, this point should be dismissed.

Quarles also contends that his sentence of 188 months is substantively unreasonable. (Quarles' Petition; DCD 1; p. 9) He claims that this Court treated the career offender enhancement as mandatory. Quarles also contends that this Court gave improper weight to his previous conviction history. Quarles made these exact same arguments in his direct appeal. *Quarles, 743 Fed.Appx. at 63.* ("Quarles appeals, arguing the district court committed procedural error by failing to consider relevant factors. He also argues that his sentence is substantively unreasonable.")

The Eighth Circuit rejected Quarles' primary arguments in his direct appeal, noting that "the district court acted well within its discretion when focusing on Quarles's extensive and serious criminal history and his pattern of recidivism." *Quarles, 743 Fed.Appx. at 63.* Quarles' within-Guidelines sentence was presumptively reasonable and was properly imposed. *Id.*

This point will be dismissed.

IX.    **Quarles indictment was defective for failing to specify a drug quantity.**

Quarles believes that the Government was required to specify a weight of the drugs that he possessed for his crime in the Indictment. He is simply mistaken.

Quarles was indicted in Count II for Possession of Oxycodone, Hydrocodone and Morphine, with the Intent to Distribute, in violation of Title 21, United States Code, § 841(a)(1) and punishable under § 841(b)(1)(C). § 841 has two basic parts that concern most drug cases. § 841(a) allows a person to be charged if they manufacture, distribute, dispense or possess with intent to manufacture, distribute or dispense a controlled substance. Subsection (b) is the penalty section. Under that subsection, the defendant may face certain mandatory minimum punishments, depending on the drug quantity involved.

For example, a person possessing more than fifty grams of actual methamphetamine or 500 grams of a substance containing a detectable amount of methamphetamine may be charged under §841(a)(1), but his sentencing consequences will be determined under the penalty section, Title 21, United States Code, Section 841(b)(1)(A)(viii) and, if found guilty, must be sentenced to a mandatory minimum sentence of at least ten years. His maximum sentence will be life. A person possessing five grams of methamphetamine or fifty grams of a substance containing methamphetamine with the intent to distribute faces a penalty under § 841(b)(viii) of at least five years imprisonment.

Therefore, subsection (a) of § 841 is the charging section for the basic criminal conduct and subsection (b) is the section that spells out the penalty. The penalties set out in subsection (b) only apply if the defendant's indictment charges those quantities. Indictments for drug offenses without mentioning drug quantities are set out in § 841(b)(1)(C) and (D). No drug quantities are listed for the penalty sections of subsections (C) and (D) and no drug quantities are

27

required to be charged in the indictment. For that reason, there is no mandatory minimum

punishment for a drug crime under § 841(a) where no drug quantity is listed in the Indictment.

Quarles' case involved just these facts. His charge was made as Possession of Controlled

Substances under § 841(a)(1), but did not list any drug quantities. Therefore, Quarles was not

subject to the mandatory minimum sentences listed in the penalty section, §841(b).

Eighth Circuit cases have approved charging drug cases by Indictment where no drug

quantity was mentioned. *See Dukes v. United States*, 255 F.3d 912, 913 (8th Cir. 2001)

("[W]hen drug quantity has not been alleged in the indictment and found beyond a reasonable

doubt by a jury, *Apprendi* precludes imposition of a sentence in excess of the maximum

prescribed by 21 U.S.C. § 841(b)(1)(C).")

Quarles' Indictment for Count II charged the following conduct:

> On or about June 18, 2016, in Scott County, within the Eastern District of
> Missouri, the defendant, Marlon Deshone Quarles, did knowingly and
> intentionally possess with the intent to distribute oxycodone, hydrocodone,
> and morphine, Schedule II and Schedule III controlled substances, in
> violation of Title 21, United States Code, Section 841(a)(1), *and punishable
> under Section 841(b)(1)(C)*.

Exhibit 1. (Emphasis furnished)

As the Court can see, Quarles was notified that his punishment would be assessed under

Subsection (b)(1)(C), which does not contain a mandatory minimum sentence. It also does not

require the pleading of a drug quantity. The Indictment tracked the language of the statute.

Quarles contends that he could not have a "fair preparation to mount a defense".

Quarles' Petition; DCD 1; p. 9) He doesn't explain why that is so or how that really affected his

case. He cites the case of *United States v. Cleaves*, 2001, Western District of Tennessee, as

authority for his position, but doesn't explain how that case helps him. While he doesn't give a

citation, the Government believes that Quarles is referring to *United States v. Cleaves*, 299 F.3d

564 (6th Cir. 2002).

28

A quick review of the holding of *Cleaves* shows that it does not assist Quarles. Cleaves was indicted, with other co-defendants, for Conspiracy to Distribute Over Five Kilograms of Cocaine and 100 Kilograms of Marijuana. *Id.* at 565. By phrasing the indictment with a drug quantity, Cleaves faced a mandatory minimum sentence under the penalty provisions of § 841(b). Cleaves was tried before the case of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) was issued. Basically, *Apprendi* held that, in order to engage the mandatory minimum sentences set out in the penalty portion of § 841(b), the Government had to plea such quantities in the indictment and have a jury find those quantities beyond a reasonable doubt. In Cleaves' case, while the Government pled the drug quantities, the Government did not submit those drug weight questions to the jury. *Id.* at 565. The Sixth Circuit found it was error to sentence Cleaves to a mandatory minimum sentence based on a drug quantity that was not found by the jury. *Id.* at 569.

Cleaves' situation is vastly different that the one faced by Quarles. Cleaves was improperly sentenced because the jury was not called upon to find a drug quantity that engaged one of the mandatory minimum sentences set out in §841(b). But Quarles was not charged with a particular drug quantity and was not subject to any mandatory minimum sentence under the penalty provisions of § 841(b). The Government is not required to prove quantity to convict a defendant of a drug crime. *See United States v. Webb*, 545 F.3d 673, 677 (8th Cir. 2008). Only if the Government seeks a sentence that exceeds the statutory sentencing range for an indeterminate amount of drugs must it charge facts giving rise to the increased sentence in the indictment and must prove those facts to the jury beyond a reasonable doubt. *Id.*

District courts may find drug quantities for sentencing purposes, by a preponderance of the evidence, for sentencing purposes, so long as those quantities do not engage the mandatory minimum sentences required by § 841(b)(A) and (B). *See United States v. Hollingsworth*, 298

F.3d 700, 702 (8th Cir. 2002).

There was no error in the Indictment and no error alleged in this Court's determination of drug quantity involved here. Quarles was charged with possessing an unspecified quantity of drugs and sentenced accordingly. His allegation will be denied.

**X.    The District Court suppressed fact-finding evidence presented to him by Quarles during the entire course of the case.**

This Court is unsure exactly what argument that Quarles makes at page 13 of his complaint, but he seems to argue that this Court improperly suppressed some kind of exculpatory or fact-finding evidence. Quarles does not set out what fact-finding evidence this Court improperly suppressed or how this error affected either his conviction or sentence. This issue will be dismissed for failure to provide a basis for relief.

## CONCLUSION

For the foregoing reasons, this Court denies Quarles' § 2255 petition without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Quarles' has not made a substantial showing of the denial of a federal constitutional right.

Dated this **30th** day of December, 2020

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE